UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-371-KK-DTBx** | Date: | September 23, 2025 |
|---|---|---|---|
| Title: | ***Daniel Martinez v. Federal Express Corporation*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss [Dkt. 23]**

## I.
## INTRODUCTION

On July 30, 2025, plaintiff Daniel Martinez ("Plaintiff") filed the operative Second Amended Class Action Complaint ("SAC") asserting various state claims against defendant Federal Express Corporation ("Defendant") and Does 1-50, arising from Defendant's alleged failure to pay for the time employees spent going through security check points and donning and doffing required workwear.  ECF Docket No. ("Dkt.") 22, SAC.  On August 11, 2025, Defendant filed the instant Motion to Dismiss and/or Strike ("Motion") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).  Dkt. 23, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); L.R. 7-15.  For the reasons set forth below, Defendant's Motion is **GRANTED IN PART and DENIED IN PART**.

///

///

///

///

# II.
# BACKGROUND

## A. RELEVANT FACTS

As alleged in the SAC, Plaintiff has been employed as "an hourly, non-exempt maintenance technician for [Defendant] in California since August 1, 2016." SAC ¶ 16. Plaintiff and all class members worked at Defendant's "offices and/or warehouses in California[.]" Id. ¶ 17.

Defendant has "a uniform policy and practice of mandating that Plaintiff and putative class members gear up in required CAT-2 suits, which are essential to perform the tasks of a maintenance technician." Id. ¶ 23. Defendant's policy "required Plaintiff and putative class members to also don and doff [the] required CAT-2 suits off the clock." Id. "Plaintiff and class members donned and doffed their uniforms at the work site, making use of the lockers and changing rooms provided and controlled by Defendant." Id. ¶ 25. The changing rooms were beyond the security check points within the facilities. Id. ¶ 25. Plaintiff alleges it is "impracticable for Plaintiff and class members . . . to take the uniforms home to be able to change into them off the worksite" because "Defendant provided fresh uniforms everyday" and the industrial soiling of the uniforms would cause Plaintiff and class members "to dirty their vehicles and homes[.]" Id. ¶ 26.

In the SAC, Plaintiff alleges for the first time Defendant "required Plaintiff and class members to go through security check points upon entering and leaving Defendant[']s facilities" while Plaintiff and class members "were not clocked in[.]" Id. ¶¶ 18-19. "Due to the high volume of employees entering and leaving at the beginning and end of shifts, Plaintiff and class members would regularly have to wait in line before going through security." Id. ¶ 20.

As a result, Plaintiff claims his and the putative class members' itemized wage statements do not reflect the hours worked during (a) the donning and doffing periods and (b) the security check points process.

## B. PROCEDURAL HISTORY

On December 19, 2023, Plaintiff initiated this matter in San Bernardino County Superior Court against Defendant by filing a Class Action Complaint asserting claims arising from allegations Defendant did not pay employees for the time spent donning and doffing CAT-2 suits. Dkt. 1-1, Ex. 1. On November 12, 2024, Plaintiff filed a First Amended Class Action Complaint ("FAC") in San Bernardino County Superior Court asserting the same donning and doffing theory. Dkt. 1-1, Ex. 3.

On February 10, 2025, Defendant removed this matter to this Court, asserting jurisdiction pursuant to the Class Action Fairness Act. Dkt. 1. On February 14, 2025, the Court issued a civil standing order, requiring Plaintiff to "file a motion for class certification no later than 100 days from the date of the scheduling conference." Dkt. 6 at 6. The Court explicitly warned the parties that "[r]equests for continuances will not be granted routinely," and "[r]equests to continue dates that have passed will be denied." Id. at 7-8. The Court set the scheduling conference for April 10, 2025. Dkt. 7.

On July 15, 2025, the Court granted Defendant's Motion for Judgment on the Pleadings on the FAC, finding Plaintiff failed to allege Defendant required Plaintiff to don and doff his required work uniform at the worksite. Dkt. 20. While the Court granted leave to amend, the Court limited amendment to the "allegation of other facts consistent with the challenged pleading" that could "cure the deficiency" identified by the Court. Id. at 5.

On July 30, 2025, Plaintiff filed the operative SAC alleging new facts to support the same donning and doffing theory of liability, but also adding an entirely new theory of liability based on time spent entering and exiting Defendant's worksites through security check points.[1] SAC. The SAC sets forth the following claims:

(1) **Cause of Action One:** Failure to Pay Minimum Wages;
(2) **Cause of Action Two:** Failure to Pay Overtime Wages;
(3) **Cause of Action Three:** Failure to Timely Pay Wages upon Termination;
(4) **Cause of Action Four:** Failure to Provide Accurate Itemized Wage Statements;
(5) **Cause of Action Five:** Violation of California Business and Professional Code Sections 17200, et seq. ("UCL"); and
(6) **Cause of Action Six:** Violation of California Labor Code Section 1198 and the Private Attorney General Act of 2004 ("PAGA").

SAC ¶¶ 39-121.

Plaintiff seeks to bring claims on behalf of:

All current and former non-exempt, hourly paid workers who worked for [Defendant] at [Defendant's] worksites in California between December 18, 2019 and through the date that class notice is mailed to the class.

Id. ¶ 32.

On August 11, 2025, Defendant filed the instant Motion, seeking to dismiss all claims and to strike Plaintiff's class claims and the new allegations regarding the time spent going through security. Mot. In support of its Motion, Defendant filed the declaration of its counsel, Thomas J. Moran ("Moran Decl."). Dkt. 23-1, Moran Decl. In addition, Defendant filed a Request for Judicial Notice.[2] Dkt. 23-2.

---

[1] Notably, the Court granted Plaintiff leave to amend to file the SAC no later than July 29, 2025, see dkt. 20 at 5, but Plaintiff did not file the SAC until July 30, 2025, dkt. 22. Plaintiff is explicitly warned future untimely pleadings may be stricken and may result in sanctions.

[2] A court may take judicial notice of documents extrinsic to the complaint if no party contests their authenticity and the complaint "necessarily relies" upon the documents, Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998), superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006), or if the documents are matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Here, Defendant requests the Court take judicial notice of Plaintiff's October 23, 2023 PAGA Notice Letter. Dkt. 23-2. Because Plaintiff does not dispute the authenticity of the document and the document is either necessarily relied upon by the Complaint or is a matter of public record, Defendant's Request for Judicial Notice is **GRANTED**.

On August 21, 2025, Plaintiff filed an Opposition.  Dkt. 25.

On August 28, 2025, Defendant filed a Reply.  Dkt. 26.

This matter, thus, stands submitted.

### III.
### LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor, Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022).  The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

### IV.
### DISCUSSION

A.     THE COURT STRIKES PLAINTIFF'S CLASS ALLEGATIONS

   1.     Applicable Law

Federal Rule of Civil Procedure 23 requires district courts to determine whether to certify a class at "an early practicable time after a person sues or is sued as a class representative[.]" Fed. R. Civ. P. 23.  Pursuant to Local Rule 23-3, "[a]t the earliest possible time after service of a pleading purporting to commence a class action . . ., but *no later than any deadline set by the assigned judge*, the proponent of the class must file a motion for certification that the action is maintainable as a class action." L.R. 23-3 (emphasis added).  District courts have "discretion to strike class allegations for

failure to comply with Local Rule 23-3." <u>Winebarger v. Pennsylvania Higher Educ. Assistance Agency</u>, 411 F. Supp. 3d 1070, 1083 (C.D. Cal. 2019); <u>see also</u> <u>Davidson v. O'Reilly Auto Enters., LLC</u>, 968 F.3d 955, 966 (9th Cir. 2020) (confirming district courts have "broad discretion in setting and enforcing deadlines" for class certification).

### 2. Analysis

Here, the Court ordered Plaintiff to "file a motion for class certification no later than 100 days from the date of the scheduling conference," dkt. 6 at 6, which the Court set for April 10, 2025, dkt. 7. Hence, the deadline for Plaintiff to file a motion for class certification was July 21, 2025. To date, Plaintiff has not filed a motion for class certification, nor has Plaintiff filed a proper motion requesting an extension of time to do so. Moreover, as this case was initiated in December of 2023, Plaintiff has had more than sufficient time to investigate any class claims. Thus, because Plaintiff failed to file a timely motion for class certification in compliance with the Local Rules and this Court's Standing Order, his class claims shall be stricken. <u>See</u> <u>Winebarger</u>, 411 F. Supp. 3d at 1083 (striking class allegations from plaintiff's FAC for failure to comply with Local Rule 23-3). Accordingly, Defendant's motion to strike Plaintiff's class allegations is **GRANTED**.

## B.  PLAINTIFF'S SECURITY CHECK POINT CLAIMS ARE DISMISSED WITHOUT PREJUDICE

### 1. Applicable Law

When a Court grants leave to amend, a party may not add allegations "outside the scope of the leave to amend[.]" <u>PB Farradyne, Inc. v. Peterson</u>, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006); <u>Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.</u>, No. CV 18-6437-MWF-ASx, 2020 WL 10965737, at *2 (C.D. Cal. Nov. 5, 2020) ("The fact that the Ninth Circuit and the Court did not expressly preclude Plaintiff from bringing additional and entirely unrelated claims did not give Plaintiff carte blanche to do so.").

### 2. Analysis

Here, Plaintiff seeks to add an entirely new theory of liability based on new allegations regarding time spent going through security check points when entering and exiting Defendant's facilities. SAC ¶¶ 18-21. Notably, this theory was not asserted in the Complaint or FAC. Most importantly, this theory goes beyond the amendment limitations in the Court's July 15, 2025 Order granting leave to amend. <u>DeLeon v. Wells Fargo Bank, N.A.</u>, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("In cases like this one, however, where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken.").[3] Accordingly, to the

---

[3] Moreover, Plaintiff has not filed a motion seeking leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15. <u>See</u> <u>Boyack v. Regis Corp.</u>, 812 F. App'x 428, 431 (9th Cir. 2020) (affirming dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(6) that "exceeded the scope of the Parties' stipulation allowing Appellants to file a SAC" where Plaintiff did not seek "leave of court").

extent Plaintiff's claims are based on this new theory, Defendant's Motion to Dismiss claims based on the security check points is **GRANTED**.[4]

## C.     PLAINTIFF STATES CLAIMS UNDER CALIFORNIA LAW

### 1.     Applicable Law

The Industrial Welfare Commission ("IWC") sets "minimum wages, maximum hours of work, and standard conditions of labor." Frlekin v. Apple Inc., 8 Cal. 5th 1038, 1045 (2020). "To achieve this goal, the IWC formulated a series of regulations known as wage orders." Huerta v. CSI Elec. Contractors, 15 Cal. 5th 908, 918 (2024). California's wage and hour laws and the wage orders are "liberally construed to favor the protection of employees." Oliver v. Konica Minolta Bus. Sols. U.S.A., Inc., 51 Cal. App. 5th 1, 16 (2020) (citation modified). The wage orders set a minimum wage for compensation for "hours worked." Id.; Morillion v. Royal Packing Co., 22 Cal. 4th 575, 581 (2000), as modified (May 10, 2000) ("All 15 wage orders contain the same definition of 'hours worked' . . ., except for IWC wage order Nos. 4–89 and 5–89, which include additional language.").

The wage orders define "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. tit. 8, § 11090. "[T]he two clauses of the 'hours worked' definition – the control clause and the suffered or permitted to work clause – establish independent factors, each of which defines whether certain time spent is compensable as 'hours worked.'" Huerta, 15 Cal. 5th at 918 (citation modified).

With respect to the control clause, California courts have interpreted "control" to include activities beyond *required* work activities, Frlekin, 8 Cal. 5th at 1048-49, and defined it "to mean '[w]hen an employer directs, commands or restrains an employee[,]'" id. at 1047 (quoting Bono Enters., Inc. v. Bradshaw, 32 Cal. App. 4th 968, 975 (1995), disapproved of on other grounds by Tidewater Marine W., Inc. v. Bradshaw, 14 Cal. 4th 557 (1996)). "To plead a donning-and-doffing theory under California law, Plaintiffs would need to 'state' plausible facts indicating that Defendants required them to don and doff at the [employer's worksite] or under [the employer's] control[.]" Alvarez v. Hyatt Regency Long Beach, No. CV-09-4791-GAF-VBKx, 2010 WL 11509322, at *4 (C.D. Cal. Jan. 5, 2010).

Employers generally exert control over activities "*at the workplace*, where the employer's interest . . . is inherently greater." Id. at 1051 (emphasis in original). Employers do not generally exert control over activities "employees ordinarily initiate on their own, prior to and after their regular workday," id. at 1051, or during periods employees use optional employer-provided services "that primarily benefit the *employee*," id. at 1051-52 (emphasis in original). "If employers offer[] a benefit or service that employees [can] choose, but [are] not required to take advantage of, compensation [is] not required." Rodriguez v. Taco Bell Corp., 896 F.3d 952, 957 (9th Cir. 2018).

---

[4] Since the new security check point allegations present a theory wholly different from the allegations in the FAC, the Court has not made a determination on whether these allegations state a claim. However, the Court notes Defendant has filed a Notice of Related Case, dkt, 24, identifying another matter that has settled with identical class action security check point claims. Thus, the Court queries whether the security check point claims are, in fact, duplicative of a case that has already settled.

However, "only 'genuine' choices—and not 'illusory' choices—avoid compensation liability under California's Wage Orders." Frlekin v. Apple, Inc., 870 F.3d 867, 873 (9th Cir. 2017), certified question answered, 8 Cal. 5th 1038 (2020).

**2. Analysis**

Here, each cause of action in the SAC relies on whether the time spent donning and doffing the required CAT-2 suits is considered hours worked under California's wage orders. See generally SAC.

While the allegations are thin, the Court finds the SAC sufficiently alleges the time spent donning and doffing the CAT-2 suits constitutes "hours worked" under the control clause of the wage orders. Specifically, construing all factual allegations in the light most favorable to Plaintiff, the SAC sufficiently alleges Plaintiff had no genuine choice but to don and doff at Defendant's worksite.[5] In particular, the SAC alleges the CAT-2 suits are essential to performing the tasks of a maintenance technician. SAC ¶ 23. Plaintiff now alleges "[i]t [is] impracticable for Plaintiff and class members . . . to take the uniforms home to be able to change into them off the worksite" because "Defendant provided fresh uniforms everyday" and the industrial soiling of the uniforms would cause Plaintiff and class members "to dirty their vehicles and homes[.]" Id. ¶ 26. While Defendant's services benefit its employees by providing them with clean CAT-2 suits, Plaintiff has sufficiently alleged that providing these services primarily benefits Defendant by ensuring employees wear the required CAT-2 suits, which are a "necessary part of Defendants business operations." Id. ¶ 24. Indeed, while Defendant does not have a policy requiring employees to don and doff at Defendant's worksite, as a practical matter, employees are required to don and doff their CAT-2 suits at work because employees are required to wear CAT-2 suit each day and the CAT-2 suits "are regularly soiled with oils, grime, and industrial products beyond what would be reasonable for employees to launder in their private capacities." Id. ¶¶ 23, 26. Hence, Plaintiff sufficiently alleges he did not have a "genuine choice," but was required to don and doff the essential CAT-2 suits at the worksite and was not compensated for this time.

Thus, the SAC includes allegations of plausible facts from which one can conclude Defendant controls Plaintiff for the period of time spent donning and doffing the required CAT-2 suits, and as such, that time can be considered "hours worked." See e.g., Frlekin, 8 Cal. 5th at 1047 ("Redefining the control clause to cover only unavoidably required employer-controlled activities would limit the scope of compensable activities, resulting in a narrow interpretation at odds with the wage order's fundamental purpose of protecting and benefitting employees."). Accordingly, Defendant's Motion is **DENIED** with respect to Causes of Action One through Six.

///

///

///

---

[5] Plaintiff does not allege or argue the time spent donning-and-doffing constitutes "hours worked" under the suffered or permitted to work clause of the wage orders.

**D. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THE PAGA CLAIM**

**1. Applicable Law**

"PAGA authorizes an employee who has been the subject of particular Labor Code violations to file a representative action on behalf of himself or herself and other aggrieved employees." Williams v. Superior Ct., 3 Cal. 5th 531, 538-39 (2017) (citing Cal. Labor Code § 2699). An employee "seek[ing] PAGA penalties must notify the [Labor and Workforce Development Agency ("LWDA")] and the employer of the specific Labor Code provisions that the employer allegedly violated, as well as the facts and theories supporting the claim." Hutcheson v. Superior Ct., 74 Cal. App. 5th 932, 939 (2022) (citing Cal. Labor Coe § 2699.3(a)(1)(A)). "Notice serves two purposes: it allows the LWDA to decide whether to allocate scarce resources to an investigation, and it allows the employer to submit a response to the LWDA which can inform the agency's decision." Id. (citation modified). "The administrative exhaustion requirement is intended to protect businesses by putting them on notice of violations such that they can remedy those violations without litigation." Hamilton v. Genesis Logistics, Inc., No. CV 13-01848-DDP-VBKx, 2013 WL 3168373, at *5 (C.D. Cal. June 20, 2013). When a plaintiff fails to exhaust the administrative remedies to support a PAGA claim prior to filing a lawsuit, the PAGA claim is subject to dismissal. See Stagner v. Luxottica Retail N. Am., Inc., No. C 11-02889 CW, 2011 WL 3667502, at *8 (N.D. Cal. Aug. 22, 2011) (dismissing plaintiff's PAGA claim because plaintiff "did not exhaust her administrative remedies at the time she filed this lawsuit"); Varsam v. Lab'y Corp. of Am., 120 F. Supp. 3d 1173, 1183 (S.D. Cal. 2015) (same).

**2. Analysis**

Here, Plaintiff fails to state a PAGA claim because Plaintiff failed to exhaust his administrative remedies and provide notice of his PAGA claim to Defendant. On October 23, 2023, Plaintiff provided notice to the LWDA and FedEx Corporation of his PAGA claims. Dkt. 23-2. On November 12, 2024, Plaintiff dismissed FedEx Corporation and filed the FAC, identifying Defendant. Dkt. 1-1, Exs. 2-3. Notably, Defendant is not identified in Plaintiff's notice, and Plaintiff has not made any argument Defendant is an alter ego of FedEx Corporation. Plaintiff only argues Defendant may be "changed via amended complaint that related back to an original PAGA notice." Dkt. 25 at 6 (citing Hutcheson, 74 Cal. App. 5th at 939). However, the court in Hutcheson did not analyze whether a Plaintiff could bring a claim against a defendant for whom no notice was provided. See Hutcheson, 74 Cal. App. 5th at 939 (permitting the substitution of another employee as the named plaintiff). Thus, Plaintiff failed to provide sufficient notice to Defendant. Accordingly, Defendant's Motion to Dismiss Plaintiff's PAGA claim is **GRANTED**.

**V.
CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's request to strike class allegations is **GRANTED**;
2. Defendant's request for dismissal of claims brought pursuant to Plaintiff's security check point theory is **GRANTED**;

3. Defendant's request for dismissal of Causes of Action One through Six is **DENIED**; and
4. Defendant's request for dismissal of Plaintiff's PAGA claim is **GRANTED.**

**IT IS SO ORDERED**.